AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
MAY 15 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature]
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of

Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153

Case No. 2:17-SW-366-CKD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the Eastern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted Online Enticement of a Minor |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Christopher Dill, FBI Special Agent
*Printed name and title*

Sworn to before me and signed ~~in my presence.~~ via telephone

Date: 5/12/2017 8:38pm

[signature]
*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
JEREMY KELLEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153 | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE |

I, Christopher Dill, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the vehicle registered to subject DONALD THREAT, a Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153, as further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the FBI, and have been since 2013. I am currently assigned to the Sacramento Division of the FBI, Violent Crime Squad, where I investigate various federal crimes including federal computer crimes. My duties include investigating crimes against children and juvenile sex trafficking. I have investigated cases involving the exploitation of children through coercion and enticement, and transportation with intent to engage in criminal sexual activity. Through previous investigative activities, classroom and online training courses provided by the FBI, I have experience and received training in these criminal violations, as well as the Sexual Enticement of a Minor or the

Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including those listed above.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. PROBABLE CAUSE

4. On April 19, 2017, an Undercover Agent (UCA#1) accessed the internet from a government owned computer and placed a message in the 'women for men' portion of the Personals Ads section on the website www.craigslist.org. The message contained contact information, using a common female first name, for a third party message application and requested anyone reading the message to text if they want to talk and could access Beale Air Force Base (BAFB).

5. On April 20, 2017, UCA#1 accessed the KIK[1] chat application on a government owned Apple iPad. UCA#1 received a message from KIK username 'Don4you', and the screenname of "Don Rocco". The following conversations are between UCA#1 and KIK username 'Don4you' which through investigative means was determined to be DONALD THREATT and is shown in the following paragraphs. THREATT responded to the initial message saying "Hi, I can get on the base. Let's talk".

6. The UCA#1 replies to the message saying that UCA#1 is currently at school and it may take some time to respond to messages. UCA#1 asked ASL? [Note: ASL is shorthand for asking a person "Age, Sex, and Location?"]. The conversation followed as such:

a. *THREATT: I'm 50 yr old white man in Solano county*

*How about telling about you*

UCA#1: I'm wayyy younger if that's ok lol 15/f/On Beale afb right now[2]

[1] KIK Messenger is an application that is publicly available for download and use on cellular phones and tablet devices running both the Android and iOS (Apple's mobile device operating system) operating systems. KIK Messenger offers a medium for users to send messages to other users of the KIK Messenger application. These messages can contain text, images, videos, and emoticons. KIK Messenger is not an encrypted platform. The KIK Messenger company is located in Canada.

[2] 15/f/On Beale afb right now is the UCA responding that his/her age is 15 years old, female, and located on Beale Air Force Base.

*THREATT: Were you posting for someone older like me.*

UCA#1: Anyone honestly lolol

*THREATT: What is it you like to do.*

UCA#1: I love online games,kinda a nerd, I play soccer and track. Hbu? [Note: Hbu is shorthand for the question "How about you?"]

*THREATT: Sort of a computer nerd, like to cook, pretty sure different from the things you like. Have you been with someone older before*

7. The conversation was resumed the following day on April 21, 2017 when THREATT sent a message at approximately 7:25 AM. During this conversation THREATT inquired if UCA#1 had a boyfriend at school and for the UCA#1 to describe themselves. THREATT responded with his description as "*5'10" tall 190# brown hair/eyes*". [Note: The Department of Motor Vehicle record for THREATT states his height: 5'10", weight: 200, hair: brown, and eyes: brown.]

8. UCA#1 and THREATT engage in a conversation about older men being around the UCA#1 since she is on a military base and if she ever fantasized. The conversation moves to THREATT asking about UCA#1's experience and if she hears things from her mother's bedroom if she brings guys home. It continues as follows:

a. UCA#1: She actually just got divorced and she's gone for another 4 days tdy but I use to hear her n my dad a lot lol

*THREATT: Ah lol, ever see anything*
*Where do you stay when she gone*

UCA#1: No thank god I never walked in on them haha
In my house on base

*THREATT: Oh I thought someone kept an eye on you*

UCA#1: Just me! My mom trust me so it works out haha
Everything u can teach honestly
I just want to impress my next boyfriend u know?

*THREATT: oh and when do you want the lessons to start*

UCA#1: just please be nice and not forceful. If you promise to that my mom is gone for the next four days so whenever is fine!!!

*THREATT: Being forceful is the wrong thing to be with someone like you who is wanting to learn*

UCA#1: Omg u r so freaking nice lol
How bad does it hurt though?

*THREATT: always been nice as much as I can. It shouldn't hurt much if it's done right. Can you send me a picture. Yes*

UCA#1: Can u send a pic too, I'm nervous lol

*THREATT: You can understand if I'm being safe seeing how you are a young girl lol*

9. The UCA#1 asks if he/she is supposed to send a photo first and explains that they have something that will keep him/her from texting back immediately. THREATT responds "*It's ok don't apologize just being safe and want to make sure you have a good time and the experience you are wanting. Yes a picture first would be good. Have a good lunch*". A short time later the UCA#1 sends a photo to THREATT who states he won't share it with anyone and then makes a request, followed immediately by two other messages:

a. *THREATT: This is going sound strange but I'll feel safer. Can you go to the toilet and take a selfie of your breast or between your thighs so I know you are serious*

*I will not blackmail you cause I'm want to teach you a lot of things you want to learn. I am very real and will send you my picture after I what I asked you for. Are you wanting to do it at your house and what about your neighbors seeing a strange car in the drive way*

*I can't be there after you get out of school but later. I really want to meet you*

10. UCA#1 responds that she has a garage that THREATT can park in and asks if he can really get on to Beale Air Force Base because she thinks you have to be military. THREATT responds that he would park in the garage and states "*Yes I can get on the base*".

11. The conversation continues with small talk over the course of two more days and on April 24, 2017, THREATT states he is curious about what UCA#1 does after school and weekends when her mom is away. The conversation between the UCA#1 and THREATT include when the mom comes home and when she will be free again. The two participants exchange fewer messages for a short period and THREATT asks if she is scared to kik [Note: Send text messages via the KIK application.] The UCA#1 responds that he seems nice but he hasn't sent a photo and she doesn't know what he looks like. THREATT then directs the UCA#1 in how to delete messages so their conversation isn't' seen by anyone else. The conversation goes as follows:

a. *THREATT: Yeah I know but you do I have more reason to be scared*

UCA#1: Ughhh I'm not going to say anything I don't want to get in trouble either my mom would kill me!!!!!

*THREATT: Then you can imagine what she would do to me*

UCA#1: I know :/

*THREATT: Need really be careful. Even messaging gets me nervous hoping you're deleting our conversation after*

UCA#1: I haven't but I can, I'm sry I've never done this before

How do I do that rly quick

*THREATT: Where is has who you are talking to tap that*

UCA#1: Oh ok sec

*THREATT: Get it done*

12. During the conversation captioned above THREATT states he hopes to see another photo of the female or they will hopefully take some together, but they will figure something out later. The conversation between the two continues over the next two days with small talk and then on April 27, 2017, THREATT asks if the UCA#1 ever masturbates.

13. On April 28, 2017, THREATT continues the conversation as follows:

a. *THREATT: How I want to make your first time very exciting for you, my touching your body feeling you getting really wet*

UCA#1: Sounds so hot!

*THREATT: Hearing you breathing heavy maybe moan asking me to do more*

*Kissing your neck then your breast suck your nipples making them hard*

[Note: The conversation ends briefly, then continues below.]

*THREATT: After you tell your friends what we do they might want to join us*

*Are you rubbing your pussy under the panties*

UCA#1: Should I?

*THREATT: Yes*

UCA#1: Ok

*THREATT: After I have your pussy wet and you are feeling good I'll finger you for a bit*

*Tell me your pussy wet*

UCA#1: Will that part hurt? It kinda is

*THREATT: When I have you breathing heavy and moaning I'll stop have you you on your knees you'll open your mouth to take my dick*

*Will you do that*

UCA#1: I can try!!! Just don't be mad if I'm not good I haven't done any of that lolol. Yes I'm trying too

*THREATT: I know you're be learning to such and lick my dick*

*that sound good to you baby*

*don't stick your finger just feel your pussy hole get it wet*

*Then we can do 69 I know you've heard of that*

*Do you tell yo*

*But I just want you*

14. The conversation above ended on April 30, 2017 and they continue with small talk until May 1, 2017 when THREATT talks about UCA#1 going to college. He asks if she will invite him to her dorm room and states he of course wants to bang a college girl. He then states he might invite another guy to have sex with UCA#1. He continues on saying he can be in one hole while the other male is in another. He also talks about involving another female so a girl could be sitting on his face while UCA#1 is "*riding my dick*". He then states "*but first I have lots to teach you*". The conversation continues:

a. *THREATT: I want you alone*

UCA#1: Me to for the first time :/

*THREATT: For a few times till you are comfortable doing it*

*You learned to take me in your mouth*

UCA#1: ok

R we going to be able to hang out Friday?

I'm excited now lol

*THREATT: I hope so. Are wet thinking about it*

15. The conversation for the remainder of that day is small talk and resumes to being sexual in nature when THREATT states on May 2, 2017, "*curious, you said two of you friends met with older men were younger than you they 13-14*".

16. On May 2, 2017, THREATT tells UCA#1 that his birthday is September 12. [Note: DMV records for THREATT state his birthday is September 12, 1950.] The conversation on May 2, 2017 continues as follows:

*THREATT: What time is your mom leaving for SF Friday*

UCA#1: Idk she said she has a half day tho, I can ask today

Sneakily ask lol

*THREATT: No don't ask she might get suspicious just let things flow*

*Being sneaky never works*

UCA#1: Ok good idea

*THREATT: are your neighbors nosey*

17. The UCA#1 and THREATT continue messaging on May 3, 2017. THREATT asks if she has heard of role play. He continues "*Like dad/daughter, teacher/student, well you are starting with having sex with the stranger adds to the sensual experience*". He continues a short time later as follows:

*THREATT: Other role play that some girls like is the rape play*

UCA#1: What do u want to do :)

*THREATT: Your already going to be doing sex with a stranger and I'm going to blindfold you so it's a stranger rape role play*

UCA#1: Omg should I be scared or excited lol be easy on me pls!

*THREATT: You tell me are you excited and maybe a little scared*

UCA#1: Kinda both hehe r u going to be easy on me tho my first time :'(

*THREATT: You can consider it a gentle rape*

18. Continuing the same conversation THREATT states he will bring the UCA#1's favorite drink when he comes to see her. It returns to being sexual in nature when THREATT states "*We'll be alone so you can moan loud just don't scream to loud don't want the neighbors to can the cops*", he types a second message "*call*". They then talk about teachers and school for a few messages before THREATT states you girls in school dress up and drive guys crazy. He asks about skirts, school outfits, and if UCA#1 wears "*tongs*" [Note: possible misspelling of thongs]. THREATT states he will take the undies UCA#1 wears on Friday when they meet with him when he leaves so he can always smell her until they meet the next time.

19. THREATT asks what time UCA#1 will be home after track practice and states pulling into the garage when he visits so no one will see him because it's daylight at that time. He continues to plan his visit by stating:

*THREATT: How about later when it's getting dark you can open the garage turn the lights out I'll pull in with my lights out also*

UCA#1: Ok I'll shut the garage when u pull in if u want

*THREATT: Yeah You'll have your back to me so I can blindfold you*

[Continued approximately 11 minutes later]

*THREATT: would be your first time sleeping with a man*
*could do you again before I leave*
*What are you doing Saturday*

UCA#1: It would be! Nuthin I don't think, y?

*THREATT: If you like what we did I can come back Saturday*

UCA#1: Ok I think I will :) ok awesome!

*THREATT: that is if you want to practice and learn*

20. They continue to chat when TREATT says he's thinking about getting a hotel room instead of meeting at the house. They chat about the UCA#1 taking an Uber or having THREATT pick her up. He then states "*Good when I take you to the movies I might have my hands in your panties if you are wearing a skirt would you like that*". He continues by saying "*If there is not a lot of people there I'll kneel between your legs to lick you*".

21. On May 4, 2017, the conversation continues and THREATT states he will bring strawberry flavor lube for the meeting with her. He also states he got a blindfold for her. Later in the conversation on this date THREATT states he does plans for renewable energy and green building design, because he has spent two years studying it. [Note: An open source search was conducted for THREATT's LinkedIn social media account. His account shows his job as Renewables & Environment Professional, San Francisco Bay Area.]

22. On May 4, 2017, THREATT and UCA#1 talk about her mom's divorce and how long they were together. THREATT then asks if UCA#1 has been thinking about what they will be doing

when together and if that makes her horny, a little wet, or if she feels a tinkle between her thighs. UCA#1 states she is at school, but THREATT continues asking if she is thinking of him licking her between her thighs. He describes himself as nasty and he will teach her to like it. He states she can call him by a different name because people do that when having sex. He says she is his "*sweet baby girl*" and he wants to hear that when he's making her feel good.

23. On May 5, 2017, THREATT and UCA#1 plan to meet on Friday, May 12, 2017. THREATT states, "*I just think how it'll be more exciting and know you'll be nervous but will calm down when I start kiss your ear and down your neck working around to your nice lips where you open them so our tongues touch*".

24. On May 7, 2017, THREATT and UCA#1 are messaging about interests when he states he has a 73 Pontiac Firebird. The conversation continues about the upcoming meet:

> *THREATT: Well like we planned for this weekend I'd be with you Friday night then come back Saturday night depending when your mom is coming back Sunday morning*
>
> UCA#1: Ok sounds good to me!!! I'm so excited :)!!
>
> *THREATT: Oh, Friday when I come you'll just be in your panties with the lights off Would you do that for me*
>
> [continued after they got disconnected]
>
> *THREATT: just stay were the you open the garage door all you need to do is turn around so you looking away and I can put your blindfold on we can start there*
>
> *I'm hoping you'll be excited standing there*
>
> *Glad your mom had you straighten out the garage for me*
>
> *Lol*

25. On May 11, 2017, THREATT asked for details about his meeting with the 15 year old female, UCA#1. He asks for the address to her home in the following message: "*Ok, just tell me the address. I want look at a map see the best way come so not seen*".

26. All of these messages were transmitted through the messaging application KIK. KIK must be downloaded to a digital device, either phone, tablet, and/or accessed from a computer in order for it to be used. On May 3, 2017, KIK, Interactive returned subscriber information in accordance to an administrative subpoena. The return contained phone information that KIK was registered on a Samsung SGH-I317 device utilizing an Android Operating System (OS). The KIK return also contained Internet Protocol (IP) addresses utilized by the account and device to send and receive messages. The IP address 23.121.188.213 was used and labeled as "WIFI". The email address used to verify the KIK Account 'Don4you' was don.rocca@yahoo.com. The Internet is a means and facility of interstate and foreign commerce.

27. On May 10, 2017, AT&T Internet Services returned subscriber information in accordance to an administrative subpoena that was served. The subscriber record for IP address 23.121.188.213. The name on the account is DONALD THREATT, account number: 123810344, address of 2653 Violet Ave, Fairfield, CA 94533, registered email address: dthreatt2@gmail.com, phone number: (707) 853-0673. DMV records indicate THREATT's current address is also 2653 Violet Ave, Fairfield, CA 94533. According to database records, the phone number (707) 853-0673 is a cellular telephone registered to DONALD THREATT, address of 2653 Violet Ave, Fairfield, CA, 94533 and operated with AT&T Wireless service.

28. A subpoena was submitted to AT&T Wireless for phone subscriber information and it was returned on May 11, 2017 with the owner as DONALD THREATT, 2653 Violet Ave, Fairfield, CA 94533, account number 436068675177, and the phone IMSI: 310410917532561.

29. A registered vehicle search was conducted and THREATT has a 1973 Pontiac with license plate 958WBS registered in his name; which corresponds with his message on May 7, 2017 saying he has a 73 Pontiac Firebird.

30. A criminal history background check was conducted by the FBI. According to records DONALD THREATT is a registered sex offender for a conviction of arranging to meet with

a minor for the intent of sex (288.4 state penal code.) THREATT is on probation until October 18, 2017.

31. According to military database records, THREATT is a retired Air Force Master Sergeant with a "current" retired status. Retired military members possess identification cards which allow access to military installations. The current address listed for THREATT in the military database is 2653 Violet Ave, Fairfield, CA 94533.

32. As discussed previously, THREATT and UCA#1 arranged to meet on Friday May 12, 2017, at the home of UCA#1, whom THREATT believes to be a 15 year old female. In communications with UCA#1, THREATT has stated he will bring with him a blindfold, rope, V8 crush beverages, condoms, lube, and an unspecified sex toy.

33. I know from conversations with surveillance personnel who have personal knowledge of the events that on May 12, 2017, they observed THREATT at 2653 Violet Ave., Fairfield, CA 94522. Agents observed THREATT enter a gold colored Toyota Prius with California handicap license plate 03153. Surveillance personnel observed THREATT drive to a Lowe's Home Improvement at 3400 N. Texas Street, Fairfield, CA, where they saw him purchase rope. A photo of THREATT in the Lowe's with rope is included to the right.



34. California DMV records indicate that THREATT has two disabled plates registered to him, though neither is 03153. From speaking with California DMV employees, I know that the DMV does not have any records of a handicap license plate 03153.

35. Surveillance personnel continuously observed THREATT as he travelled from his home in Fairfield to Beale Air Force Base. At approximately 7:05 p.m. on May 12, 2017,

THREATT drive by the address given to him by UCA#1. He then circled the neighborhood and requested UCA#1 to open the garage. UCA#1 opened the garage, THREATT then pulled the Prius into the garage and yelled, "Shut it!" At that point, I exited the home into the garage and ordered THREATT out of the vehicle. THREATT was placed in handcuffs. I asked him if his name was Donald THREATT, he said it was. I observed a military identification in the center counsel of the Prius. I then asked if he had a driver's license. THREATT said he did, and that it was in his wallet in the counsel in the car. I retrieved the identification and wallet from the car to assist me in identifying THREATT.

36. Photos of the identification are included below:






37. Upon identifying THREATT, I arrested him on probable cause that he committed a violation of 18 U.S.C. § 2422(b), attempted enticement of a minor.

38. Following THREATT's arrest, I observed the VIN of the Toyota Prius, which was JTDKB20U553097347. This VIN number is for 2005 Toyota Prius registered to Donald THREAT. The license that is supposed to be on this vehicle is 5RJE494. The registration on this vehicle is expired.

39. In plain view in the Prius on the front seat were a black sleeping mask and a grey plastic shopping bag, and a black zipper bag with the brand Dockers on it. It appears to be a large toiletries bag. Also visible was a Go-Pro case, which I understand would hold a video recording device. In one of THREATT's communications with UCA#1 he indicated he wanted to video tape his sexual activity with UCA#1. In the back seat of the Prius I observed in plain sight a tripod and two camera bags.

40. Visible on top of the center counsel was a black Samsung cellular telephone in a black case. As discussed above, THREATT has a Samsung phone registered to him with AT&T, and KIK also reported that the Don4you account was accessed from a Samsung device.

41. Also visible was a bottle of pills in a cup holder. From my training and experience, I know some people take medication to assist them in their sexual performance.

## III. TECHNICAL TERMS

42. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in

electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists

of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

43. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

44. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

45. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was

used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device in an attempt to entice a minor to engage in , the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and

experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

46. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## V. CONCLUSION

47. Manner of execution. Because this warrant seeks permission to search a vehicle that is already in a secured environment and to examine any devices therein, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

48. I submit that this affidavit supports probable cause for a warrant to search the vehicle described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

/s/

Christopher Dill
Special Agent
Federal Bureau of Investigation (FBI)

Subscribed and sworn ~~to before me~~ via telephone on: 5/12/2017 8:30pm

[signature]

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

/s/ JEREMY J. KELLEY
Approved as to form by AUSA JEREMY KELLEY

**ATTACHMENT A**

The subject vehicle to be search is described as follows:

A Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153

## ATTACHMENT B

1. All evidence relating to violations of 18 U.S.C. § 2422(b), Attempted Online Enticement, involving DONALD THREATT and occurring after April 19, 2017, stored or found in the vehicle to be searched and in any form that they may be stored or found, including:

a. Blindfolds, rope, V8 crush beverages, condoms, lube, and sex toys;

b. Any other items that appear to be gifts for a minor that could be used to gain the minor's confidence and/or trust to induce a minor to engage in sexual activity;

c. Receipts for the purchase of any of the above items or any other items evidencing violations of 18 U.S.C. § 2422(b);

d. Records and information relating to the ownership and use of the subject vehicle;

e. Any electronic devices, including but not limited to, a Samsung cellular telephone, digital cameras, or a Go-Pro;

f. Any communications with minors or communications with adults regarding minors;

g. Any information pertaining to any individual's sexual interest in minors;

h. Any information in digital or hard-copy format regarding the KIK Messenger Application, ownership of KIK Messenger accounts, and any information regarding other accounts accessed by or communicated with the account associated with Don4you

i. Records and information relating to the alias Don Rocco

j. Records and information relating to the e-mail account don.rocca@yahoo.com;

k. Records and information relating to the e-mail account dthreatt2@gmail.com;

l. Records and information relating to communications with Internet Protocol addresses 149.101.1.114, 149.101.1.115, or 149.101.1.116;

m. Records and information relating to communications with IP address 23.121.188.213;

n. Records and information relating to Samsung cell phone with IMSI: 310410917532561;

o. Records and information relating to any individuals who accessed and viewed a postings on www.craigslist.org on April 19 and 20, 2017;

p. Records and information relating to the identity or location of the suspects;

q. Any information pertaining to any individual's sexual interest in minors;

r. Any evidence that the person in the vehicle was prepared to engage in sexual activity, including any medications which would assist in that activity;

s. Any text messages, emails, chats, or other communications regarding the sexual exploitation of minors;

t. Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense in any form;

u. Any items, images, documents, communications, records, and information pertaining to the sexually explicit communications with minor(s) or adult(s) in relation to minors that affected or were transmitted or received via computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail, including:

i. Envelopes, letters, and other correspondence including, electronic mail, chat logs, and electronic or other instant messages, establishing possession, access to, affect on, or transmission through interstate or foreign commerce, including by United States mail or via computer, of child pornography or visual depictions of minors engaged in sexually explicit conduct;

ii. Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind affecting interstate or foreign commerce or involving the transmission via interstate or foreign commerce, including by U.S. mail or by computer, of any communications regarding a sexual interest in minors;

iii. Credit card information, including bills and payment information, regarding Internet service; purchase of computer hardware, software, or storage media; purchase of or payment for memberships to web sites and/or chat applications;

iv. Records evidencing occupancy or ownership of the premises described above, including utility/telephone bills or addressed correspondence; and

v. Records or other items that indicate ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes.

v. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form, including but not limited to:

i. Evidence identifying the location from which images of child pornography were downloaded, including date and time of such downloads;

ii. Evidence identifying whether image and/or video files containing child pornography were ever viewed, to include date and time of such viewing;

iii. Evidence identifying whether images and/or videos files were deleted, to include date and time of deletion

2. Computers or storage media used as a means to commit the violations described above, including the creation, transmission, receipt, and storage of communications of enticement of a minor for sexual activity and is a violation of 18 U.S.C. § 2422(b).

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of

Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153

Case No. 2:17-SW-366-CKD

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of California *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before May 26, 2017 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ________________.

Date and time issued: 5/12/2017 8:38 pm

Judge's signature: Carolyn K. Delaney [signature]

City and state: ~~Sacramento~~ El Dorado Hills, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

Signature of Judge

Date

## ATTACHMENT A

The subject vehicle to be search is described as follows:

A Toyota Prius bearing VIN number JTDKB20U553097347 and California handicap license plate 03153

## ATTACHMENT B

1. All evidence relating to violations of 18 U.S.C. § 2422(b), Attempted Online Enticement, involving DONALD THREATT and occurring after April 19, 2017, stored or found in the vehicle to be searched and in any form that they may be stored or found, including:

a. Blindfolds, rope, V8 crush beverages, condoms, lube, and sex toys;

b. Any other items that appear to be gifts for a minor that could be used to gain the minor's confidence and/or trust to induce a minor to engage in sexual activity;

c. Receipts for the purchase of any of the above items or any other items evidencing violations of 18 U.S.C. § 2422(b);

d. Records and information relating to the ownership and use of the subject vehicle;

e. Any electronic devices, including but not limited to, a Samsung cellular telephone, digital cameras, or a Go-Pro;

f. Any communications with minors or communications with adults regarding minors;

g. Any information pertaining to any individual's sexual interest in minors;

h. Any information in digital or hard-copy format regarding the KIK Messenger Application, ownership of KIK Messenger accounts, and any information regarding other accounts accessed by or communicated with the account associated with Don4you

i. Records and information relating to the alias Don Rocco

j. Records and information relating to the e-mail account don.rocca@yahoo.com;

k. Records and information relating to the e-mail account dthreatt2@gmail.com;

l. Records and information relating to communications with Internet Protocol addresses 149.101.1.114, 149.101.1.115, or 149.101.1.116;

m. Records and information relating to communications with IP address 23.121.188.213;

n. Records and information relating to Samsung cell phone with IMSI: 310410917532561;

o. Records and information relating to any individuals who accessed and viewed a postings on www.craigslist.org on April 19 and 20, 2017;

p. Records and information relating to the identity or location of the suspects;

q. Any information pertaining to any individual's sexual interest in minors;

r. Any evidence that the person in the vehicle was prepared to engage in sexual activity, including any medications which would assist in that activity;

s. Any text messages, emails, chats, or other communications regarding the sexual exploitation of minors;

t. Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense in any form;

u. Any items, images, documents, communications, records, and information pertaining to the sexually explicit communications with minor(s) or adult(s) in relation to minors that affected or were transmitted or received via computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail, including:

   i. Envelopes, letters, and other correspondence including, electronic mail, chat logs, and electronic or other instant messages, establishing possession, access to, affect on, or transmission through interstate or foreign commerce, including by United States mail or via computer, of child pornography or visual depictions of minors engaged in sexually explicit conduct;

   ii. Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind affecting interstate or foreign commerce or involving the transmission via interstate or foreign commerce, including by U.S. mail or by computer, of any communications regarding a sexual interest in minors;

iii. Credit card information, including bills and payment information, regarding Internet service; purchase of computer hardware, software, or storage media; purchase of or payment for memberships to web sites and/or chat applications;

iv. Records evidencing occupancy or ownership of the premises described above, including utility/telephone bills or addressed correspondence; and

v. Records or other items that indicate ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes.

v. Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form, including but not limited to:

i. Evidence identifying the location from which images of child pornography were downloaded, including date and time of such downloads;

ii. Evidence identifying whether image and/or video files containing child pornography were ever viewed, to include date and time of such viewing;

iii. Evidence identifying whether images and/or videos files were deleted, to include date and time of deletion

2. Computers or storage media used as a means to commit the violations described above, including the creation, transmission, receipt, and storage of communications of enticement of a minor for sexual activity and is a violation of 18 U.S.C. § 2422(b).

3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.